

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

O-7059

Dear Sir:

Opinion No. O-7059

Re: Applicability of the Texas
Stock Transfer Tax (Article
7047a, V.A.C.S.) to the
transactions in question.

Your request for opinion and the attached instruments present the following facts:

American Power & Light Company ("American") and Electric Power & Light Corporation ("Electric") are Maine Corporations, and registered holding company subsidiaries of Electric Bond & Share Company. American owned all of the common stock of Texas Power & Light Company and of Texas Electric Service Company, both Texas corporations, and Electric owned 91% of the common stock of Dallas Power & Light Company, also a Texas corporation.

Pursuant to its powers under the Public Utility Holding Company Act of 1935 (15 U.S.C.A., Ch. 2C, Sections 79, et seq), in Docket No. 70-1134, No. 70-1135, and No. 59-12, the Securities and Exchange Commission approved the formation by American of a new Texas Corporation, Texas Utilities Company ("Texas Utilities"), and approved the proposal of American to transfer to Texas Utilities all of the common stock of Texas Power & Light Company, and all but 50 shares of Texas Electric Service Company, together with an option to purchase the said 50 shares; and approved the proposal of Texas Utilities to purchase, pursuant to an agreement entered into between American and Electric prior to the organization of Texas Utilities, from Electric the 91% of the shares of the Dallas Power & Light Company. In addition thereto, the Securities and

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Exchange Commission ordered the following:

1. That American effect a complete severance of control of Texas Utilities and its subsidiaries, "including the termination of all interlocking officerhsips and directorships between Texas Utilities (and its subsidiaries) and American and other companies in the Electric Bond and Share system and any other relationships, contracts or other arrangements which may aid in the retention of controlling influence."

2. That American and Electric be dissolved.

The transfer of the stocks of Texas Power and Texas Electric to Texas Utilities took place outside of the State of Texas, and was effected by endorsement and delivery of the certificates, in accordance with the provisions of the Uniform Stock Transfer Act (Articles 1358-1 to 1358-26, V.A.C.S.). The purchase by Texas Utilities of the stock of Dallas Power & Light also took place outside of the State of Texas.

You ask the following questions:

1. Are any of these transactions subject to the Texas Stock Transfer Tax?

2. If the answer to the above question is "no", then will the tax become due when the transfer is made upon the books of the corporations in Texas?

Section 1 of the Stock Transfer Tax Act provides in part as follows:

"There is hereby imposed and levied a tax as hereinafter provided on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or certificates for rights to stock, or certificates of deposit representing an interest in or representing certificates made taxable under this Section, in any domestic or foreign association, company, or corporation, or certificates of interest in any business conducted by a trustee

or trustees made after the effective date hereof, whether made upon or shown by the books of the association, company, corporation, or trustee, or by an assignment in blank or by any delivery of any papers or agreement or memorandum or other evidence of sale or transfer or order for or agreement to buy...."

One exemption from the tax is stated in this language:

"It is not intended by this Article to impose a tax . . . in respect to shares or certificates of stock, or certificates of rights to stocks, or certificates of deposit representing certificates of the character taxed by this Article, in any domestic association, company, or corporation, if neither the sale, nor the order for, nor agreement to buy, nor the agreement to sell, nor the memorandum of sale, nor the delivery is made in this State and when no act necessary to effect the sale or transfer is done in this State. . ."

Under Article 1334, R. S. 1925, the stock of any corporation created under the general law of this State could be transferred only on the books of the corporation. Under such state of the law, this department held in Opinion No. 0-3713 that the tax levied by Article 7047m is an excise tax upon the privilege of transferring shares or certificates of stock by sale or gift, and that though the tax measure cannot have any extra-territorial operation, the tax will accrue and become payable if any one of the following transactions or events occurs within the State of Texas:

(1) An executory contract or agreement to sell shares or certificates of stock, whether oral or evidenced by "bill or memorandum of sale" required by Section I of the Act.

(2) An executed contract or sale of shares or certificates of stock, whether oral or evidenced by the "bill or memorandum of sale" required by Section I of the Act.

(3) A delivery of shares or certificates of stock, etc.

(4) A transfer of shares or certificates of stock upon the official books and records of the corporation.

This opinion states further:

". . . If each and all of the taxable transactions enumerated in the statute and above, transpire beyond the territorial limits of Texas, except the transfer of such shares or certificates upon the certificate books, transfer ledgers or other proper official records of the Texas Gulf Sulphur Company, . . . and this latter act or transaction is caused and required, under the mandatory constitutional and statutory provisions above discussed, to be done and recorded in Texas, then such transfer will be subject to the excise stamp tax in question. . . ."

Then, in 1943, the Legislature of Texas enacted the Uniform Stock Transfer Act, and expressly repealed said Article 1334. Section 1 of the Uniform Transfer Act provides:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificates indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. . . .

"The provisions of this section shall be applicable, although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the book of the corporation or shall be registered by a registrar or transferred by a transfer agent."

The passage of this act has had no effect upon the operation and application of the taxing act. This is to say, where the endorsement and delivery of the certificates takes place in another jurisdiction, such transactions still are not taxable under Article 7047m.

We pass now to a consideration of your second question.

New York has adopted the Uniform Stock Transfer Act, and has a Stock Transfer Tax Act upon which that of Texas was modeled. In respects material here, the taxing act is identical with Article 7047m. The Department of Taxation and Finance of New York on July 1, 1942, issued a bulletin called "Information Relating to the Stock Transfer Tax Law" which contains the following:

"Article 14. Examples of taxable transactions.

"6. The transfer of stock on the books of the corporation within the State regardless of where the other acts in connection with the sale or transfer of the stock were done."

A completed transfer of stock may involve several separate transactions. It is not necessary that all such transactions take place within the taxing jurisdiction, but the tax attaches if any one or more takes place therein. It has been said that if any part of a transfer of stock which is necessary to vest in the transferee complete ownership of the stock takes place within the taxing jurisdiction, a stock transfer tax is payable. Hence, if a transfer on the books of the corporation takes place in the taxing jurisdiction a stock transfer tax is payable (Christy and McLean, The Transfer of Stock, Second Edition, page 546, Sec. 362.) for such transfer on the books does invest the transferee with rights, powers and privileges of ownership of the stock which he does not have by virtue of endorsement and delivery of the certificate alone.

To answer your questions categorically, none of the transactions set forth in the statement of facts is subject to the transfer tax for all of them occurred without the territorial jurisdiction of Texas, but when the transfer is made or shown upon the books of the corporations in this State, such is a taxable event and the tax must be paid.

It is contended by counsel for American and Electric that "from a tax standpoint, American Power & Light Company by merely exchanging the securities of Texas Power & Light Company and Texas Electric Service Company, which it previously owned, for the securities of the Texas Utilities Company, has not caused a change in the equity ownership of the two companies involved. . . . In effect the transfer of the stock certificates from American Power & Light Company to Texas Utilities Company resulted simply in changing the ownership from one hand to the other since American Power & Light Company owns all of the securities of Texas Utilities Company."

If such be true, American is failing and refusing to comply with the express orders of the Securities and Exchange Commission to rid itself of all control of the Texas utilities companies involved, and it cannot be presumed at this time that American will so fail and refuse to comply.

Furthermore, it cannot be said in law that American, a Maine Corporation, is one and the same as Texas Utilities, a Texas Corporation. A corporation is a legal entity, created by law, and is treated as an entity separate and distinct in identity from the owners of its shares of stock. Their ownership of such shares of stock gives them no right to ownership of the assets of the corporation and they have no authority to dispose of them; the stockholders are not liable for the debts of the corporation; the contractual rights and obligations of the corporation and its stockholders are separate and distinct; the stockholders are not liable for the torts of the corporation; the residence and citizenship of the corporation are separate and distinct from that of the stockholders. This corporate fiction is respected at law and in equity, and will be disregarded only where there are compelling reasons -- as where the cloak is being utilized as a subterfuge to defeat public interest and convenience, to justify wrong, or to perpetrate fraud. The corporate entity will not be disregarded where to do so would promote an injustice or contravene public policy. 18 C.J.S. 376, et seq. To disregard the separateness of American and Texas Utilities would be to contravene the policy announced by the Public Utility Holding Company Act of 1935.

276

Counsel for said companies contend further that "in any event, the transfer was found to be in accordance with the policy announced by the enactment of the Public Utility Holding Company Act of 1935 and was to all intents and purposes involuntary and pursuant to the order of the Securities and Exchange Commission hereinabove referred to." This is not such a transfer by operation of law as has been held to be exempt from the tax. It is difficult to see the equity in counsel's position. These companies have, by their own acts, brought themselves into a situation which Congress has declared to be contrary to public policy and the best interests of the people of the United States. When ordered to absolve themselves of such action, they cannot be heard to complain that the State seeks to exact a tax from them because of the transfer.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Arthur L. Moller
Arthur L. Moller
Assistant

APPROVED MAR 13 1946

FIRST ASSISTANT
ATTORNEY GENERAL

ALM:ms


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN